UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONITA LAURENT,                )
                               )
        Plaintiff,             )
                               )
v.                             )
                               )
BUREAU OF REHABILIATION,       )   Civil Case No.  05-2307 (RJL)
INC., KAREN GASKINS JONES,     )
DOVIE LINDSAY ROSS, AND        )
LONNIE SANDERS,                )
                               )
        Defendants.            )

FILED
APR 1 4 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION

(April 11th, 2008) [#23, 24]

Plaintiff Monita Laurent ("Laurent"), a former employee of the Bureau of Rehabilitation, Inc. ("Bureau"), brought this action against the Bureau and certain named members of the Bureau's Board of Directors, asserting violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Family and Medical Leave Act ("FMLA"), and the Fair Labor Standards Act ("FLSA"); breach of contract; and wrongful discharge. Before the Court are the Motions for Summary Judgment by the Bureau and the named defendants: Karen Gaskins Jones ("Gaskins Jones"), Dovie Lindsay Ross ("Ross"), and Lonnie Sanders ("Sanders"). After consideration of the parties' pleadings and motions,

the relevant law, and the entire record herein, the Court GRANTS the defendants' motions as to all parties.

## BACKGROUND

Monita Laurent served as the Bureau's Director for Youth Services Programs from December 4, 2000 through her termination on May 5, 2004. Bureau Statement of Undisputed Facts ("Bureau Facts") ¶ 3.[1] A black woman of Haitian national origin, Laurent claims that her termination was due to her race, gender, and national origin. Am. Compl. ¶ 2. She also claims she was mistreated in other ways during her tenure at the Bureau, including rude treatment from fellow employees and a denial of her rights to accrue and take leave. Am. Compl. ¶ 3.

The Bureau is a non-profit institution that, among other things, operated two youth shelters under contract with the District of Columbia. Bureau Facts ¶¶ 1, 66. Individual defendants Gaskins Jones, Ross, and Sanders are members of the Bureau's Board of Directors. Individual Defendants' Statement of Undisputed Facts ("Ind. Def. Facts") ¶¶ 5, 6, 8. They did not supervise Laurent, and had little to no contact with her prior to this lawsuit. Ind. Def. Facts ¶¶ 13-15.

Laurent ran the Bureau's two youth shelters as part of her daily duties. Bureau Facts ¶ 68. She also supervised several employees in her capacity as director of youth services. Bureau Facts ¶ 77. Her salary from November 30, 2002 until January 31, 2003 was $1,500 per week. Bureau Facts ¶ 69. From February 2003 until Laurent went on

---

[1] In compiling this Background, the Court relies on facts identified by defendants in their statements of material facts that are not controverted by plaintiff. Under Local Civil Rule 56.1, these facts are deemed admitted.

sick leave in September 2003, she was paid a salary of $1,544.80 per week. Bureau Facts ¶ 73.

On September 15, 2003, Laurent began taking sick leave and remained on leave until May 5, 2004, the date of her termination. Bureau Facts ¶ 9. She did *not* inform the Bureau of the nature of her illness, or why it prevented her from performing her responsibilities, despite the Bureau's multiple requests for information. Bureau Facts ¶ 55.[2] While her doctor provided ten notes to the Bureau, most of them merely asserted that Laurent was "symptomatic" and unable to return to work. Attachment 6 to Robinson Decl. These notes never described the nature of Laurent's illness or gave any indication of when she might be able to return to work. Indeed, Laurent's physician specifically cited Laurent's unwillingness to release the information as the reason for non-disclosure. *Id.*

Although Laurent claims that she "told [her supervisor] when she would return," Pl. Opp. Mem. at 4, none of the doctor's notes so indicated. Attachment 6 to Robinson Decl., at B356. In fact, the last of the notes, dated May 3, 2004, stated only that Laurent would be evaluated in two weeks for a possible return to work. Attachment 6 to Robinson Decl., at B356.

However, what Laurent did inform the Bureau of was her disagreements with her colleagues. For example, on October 27, 2003, while on paid leave, Laurent sent written

---

[2] Plaintiff contests the accuracy of this fact, stating that "the agency never asked the nature of the illness." Pl. Opp. Mem. at 3. The documents belie that assertion. The Bureau sent two letters to Laurent requesting that her physician fill out an FMLA form that would disclose information about her serious health condition. EEOC Documents, at B223-32; Attachment 5 to Robinson Decl., at B934-36. Laurent never provided the requested information. Bureau Facts ¶¶ 11-14.

3

memos to the Program Director and Executive Director of the Bureau, complaining about conversations with a fellow employee, which she characterized as disrespectful towards her. Attachment 1 to Declaration of Karen Gaskins Jones, at B40-41. Laurent went on to state that she no longer would endure this "disrespect and harassment." *Id.* Interestingly, Laurent never mentions her race, gender or national origin as the source of this "disrespect and harassment."

On December 22, 2003, after Laurent was out for three months of paid sick leave, the Bureau notified her that she was being placed on Family Medical Leave Act ("FMLA") leave, retroactive to September 15, 2003. EEOC Documents at B223-32. In response, plaintiff protested in a letter, stating that the Bureau could not put her on FMLA leave without her consent. Attachment 5 to Robinson Decl., at B930, B938. It turns out Laurent wanted to begin taking FMLA leave on May 5, 2004, after her other leave was exhausted. Laurent Deposition Transcript at 47, 84; Pl. Opp. Mem. at 2.

After seven months of unexplained absences, Laurent's sick and annual leave were exhausted, and she was terminated on May 5, 2004. Bureau Facts ¶¶ 9, 52. Following her dismissal, she filed a grievance with defendant Gaskins Jones, the President of the Board of Directors. Bureau Facts ¶ 115. Gaskins Jones did not respond to this grievance within 10 days and, as a result, the denial of plaintiff's grievance became final. Bureau Facts ¶ 116.

Undaunted, plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 14, 2004. Bureau Facts ¶ 63. On or about September 30, 2005, the EEOC sent a letter to plaintiff dismissing her

4

petition and providing her with a Notice of Rights. Bureau Facts ¶ 64. Plaintiff, in turn, commenced the instant action by filing her initial Complaint on November 30, 2005.

## DISCUSSION

### I. Legal Standards

Under Rule 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-24 (1986). In deciding whether there is a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Where the court finds that facts material to the outcome of the case are at issue, a case may not be disposed of by summary judgment. *Id.* at 248. For the following reasons, the Court concludes that there are no genuine issues of material fact and the defendants are entitled to judgment as a matter of law.

### II. Title VII Claims

In racial discrimination and retaliation suits under Title VII, "the plaintiff may prove his claim with either direct evidence or by indirectly proving a prima facie case under the burden-shifting framework established in *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792, 802 (1973)]." *Kalekiristos v. CTF Hotel Mgmt. Corp.*, 958 F.Supp. 641, 665 (D.D.C.1997). Under this framework, a plaintiff-employee carries the initial burden

of production and must establish a prima facie case of discrimination. *Id.* If a plaintiff-employee does so, the burden shifts to the defendant-employer, who "must then articulate a legitimate, nondiscriminatory reason for its actions." *Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002) (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant-employer successfully provides a valid reason, the burden shifts back to the plaintiff-employee, who "must then demonstrate that the employer's stated reason was pretextual and that the true reason was discriminatory." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

However, under the D.C. Circuit Court's recent decision in *Brady v. Office of Sergeant at Arms*, No. 06-5362, 2008 WL 819989 (D.C. Cir. Mar. 28, 2008), in a disparate treatment case, once the defendant has articulated a legitimate non-discriminatory reason for its actions, the Court "need not – *and should not*" decide whether a plaintiff who suffered an adverse employment action established a prima facie case.[3] *Id.* at *3 (emphasis in original). Instead, the Court must focus on one central question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason . . . ?" *Id.* Based on the record here, the Court concludes that Laurent has not done so.

### A. Laurent's Termination

The Bureau has articulated a legitimate, non-discriminatory reason for its termination of plaintiff's employment. Plaintiff's dismissal was the result of her

---

[3] The Circuit Court's decision in *Brady* appears to be limited to disparate treatment discrimination cases. However, in this case, the Bureau's articulation of a legitimate, non-discriminatory reason for plaintiff's termination also renders irrelevant an analysis of plaintiff's prima facie case of retaliation.

unexplained seven-month absence. Simply stated, the Bureau did not know when, if ever, plaintiff would return, and it needed to fill plaintiff's position. A lengthy absence of indefinite duration, when an employer has a need for an employee who can fulfill the responsibilities of the position, constitutes a legitimate, non-discriminatory basis for termination. *See Alexander v. Tomlinson*, 507 F. Supp. 2d 2, 18 (D.D.C. 2007) (defendant's proffered explanation for plaintiff's termination – that plaintiff's absence had continued beyond a reasonable period of time and defendant had a need to fill plaintiff's position – was a legitimate, non-discriminatory reason).

While a Title VII plaintiff can resort to multiple methods of showing that the employer's stated reason for the employment action was a pretext, the most common method, and the one plaintiff relies on here, is evidence suggesting that the employer treated other employees of a different race, gender, or national origin more favorably in the same factual circumstances. *Brady*, 2008 WL 819989, at *3. To prove that she is similarly situated to another employee, a plaintiff must "demonstrate that all of the relevant aspects of [her] employment situation were nearly identical to those of the [allegedly comparable] employee.'" *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999) (internal citations and quotation marks omitted); *Alexander*, 507 F. Supp. 2d at 16. Here, plaintiff argues that other employees – Barbara Hawkins, Yolanda Thomas, and Cornell Jackson[4] – were not terminated after they exhausted their sick and annual leave. Instead, they were placed on Leave Without Pay status. Pl. Opp. Mem. ¶¶ 7; Laurent

---

[4] Plaintiff is claiming disparate treatment due to her race, gender, and national origin, but all three of these comparators are African-American, and Hawkins and Thomas are women. Def. Reply at 12.

Decl. at 1; Declaration of Robin Taylor at 2. Yet plaintiff alleges no facts that show the employment situation of these employees was "nearly identical" to hers. Plaintiff was a supervisor of the youth programs at the Bureau; none of the "similarly situated" employees held supervisory responsibilities. Def. Reply at 13. Moreover, plaintiff has not alleged that she has a disability, while all three of her fellow employees were individuals with disabilities. Def. Reply at 13. In sum, plaintiff's employment situation was not remotely identical, let alone "nearly identical" to that of these three employees, and thus no reasonable jury could find that she was treated differently from similarly situated employees.[5]

Accordingly, plaintiff has failed to show that the legitimate, non-discriminatory reason for her termination was a pretext, and defendants are entitled to summary judgment on her Title VII discrimination and retaliation claims.[6]

---

[5] Moreover, plaintiff cannot show that this legitimate reason for her termination is a pretext for retaliation. Because the termination took place six months *after* her conversations with supervisors about "disrespect and harassment," she is unable to show any causal connection between her complaints about a fellow employee's conduct and her dismissal. *Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105, 118-19 (D.D.C. 2004) (three months is the outer limit for a temporal showing of causation).

[6] Plaintiff also asserts that her termination violates the Family and Medical Leave Act. This is yet another meritless claim. Plaintiff's sole complaint with respect to the FMLA is that she was unable to take the 12 weeks of FMLA-guaranteed leave after her sick and annual leave had expired. However, the FMLA does not give employees the right to take FMLA leave *subsequent* to paid leave. An employer can designate sick or annual leave as FMLA leave, if the leave is taken for an FMLA reason, such as the serious health condition apparently suffered by plaintiff. 29 U.S.C. § 2612(d)(2)(B); 29 C.F.R. § 825.208. The Bureau did not violate the FMLA by requiring plaintiff to take twelve weeks of sick leave and FMLA leave concurrently without her consent.

In addition, plaintiff would not be entitled to have taken any leave under the FMLA on May 5, 2004 – the day she wanted to start her FMLA leave – because she would no longer have been an eligible employee. To be eligible for FMLA leave, an employee must work 1,250 hours during the preceding 12 months of employment. 29 U.S.C. § 2611(2); 29 C.F.R. § 825.110(a). Sick and annual leave do not count as hours worked for the purposes of the statute. 29 C.F.R. 825.110(c); *see also Robbins v. Bureau of Nat'l Affairs, Inc.*, 896 F. Supp. 18, 21 (D.D.C. 1995) ("[N]either paid leave nor unpaid leave are included in any calculation of 'hours of service' under the FMLA."). After discounting her time on sick and annual leave, plaintiff only worked 708.5 hours between May 2003 and May 2004, which is insufficient to reach the eligibility threshold.

Finally, while it is unclear from her complaint, plaintiff may also be asserting a retaliation claim under the FMLA. 29 U.S.C. § 2615(a)(2). This retaliation claim fails for the same reason as her Title VII discrimination and

## B. Hostile Work Environment

Plaintiff also alleges that she endured a hostile work environment during her employment at the Bureau. For plaintiff to establish the existence of a hostile work environment violation under Title VII, she must demonstrate that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race, gender, or national origin; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105, 120 (D.D.C. 2004). A workplace environment becomes hostile "only when offensive conduct permeate[s] [the workplace] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Stewart*, 275 F.3d at 1133 (citation and internal quotation marks omitted). Laurent has not demonstrated such an environment here.

Title VII gives Laurent the right to be free from harassment due to her gender, race, or national origin, but it does not protect her from the harsh rudeness that can be a non-discriminatory aspect of a less-than-ideal workplace. *See Burton v. Batista*, 339 F. Supp. 2d 97, 111 (D.D.C. 2004); *Amiri v. Stoladi Prop. Group*, 407 F. Supp. 2d 119, 126 (D.D.C. 2005) ("There is no Title VII liability for the 'ordinary tribulations of the workplace,' such as sporadic use of abusive language, occasional teasing, and isolated

---

retaliation claims fail – the Bureau has asserted a legitimate, non-discriminatory reason for plaintiff's termination, and plaintiff has provided no evidence that the reason is a pretext.

incidents.") (internal citations omitted). Laurent has not alleged any specific facially discriminatory remarks made by fellow employees and only three conversations in an eight-month period where she was subjected to either yelling or otherwise "disrespectful" behavior. Her account of these incidents of "disrespect and harassment" reveal only some limited verbal mistreatment sparked by plaintiff's handling of financial affairs. Such conduct, although difficult to endure, is not sufficiently severe that a reasonable jury could find that she was subjected to a hostile work environment as defined by law. Accordingly, defendant is entitled to summary judgment as well on plaintiff's hostile work environment count.[7]

### III. Claims as to Individuals

Finally, summary judgment should be granted for the individual defendants on all Title VII claims, not only for the reasons outlined above, but also for one other: A plaintiff may sue an individual under Title VII, in their official capacity, *not* in his or her individual capacity. *See Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995). Because

---

[7] Summary judgment is also granted on plaintiff's three remaining claims – violation of the Fair Labor Standards Act ("FLSA"), breach of contract and wrongful discharge. First, plaintiff is not entitled to receive overtime under the FLSA because she is employed in an "executive" capacity, which is exempt from the overtime regulations. 29 U.S.C. § 213(a)(1). She satisfies the three criteria for the executive exemption because she earned a salary in excess of $250 per week; she managed the Youth Services Programs, a subdivision of the Bureau; and she "regularly and customarily" supervised a staff of more than two employees. 29 C.F.R. § 541.1 (2003).

Second, plaintiff does not make any allegation in her pleadings or in her opposition to the summary judgment motion that would support a breach of contract claim. She alleges that her discharge "was in violation of the contract [an employment manual] entered into between the plaintiff and the defendants." Am. Compl. at 5-6. She further explains in her opposition papers that her "rights to follow the Agency's Grievance Procedure . . . was [sic] violated by the agency advertising my position on May 7, 2004." Laurent Decl. at 4. But nowhere does the employment manual state that an employee's position will not be advertised until the grievance process is complete. Attachment 1 to Robinson Decl., at B401-B407. These allegations therefore do not satisfy plaintiff's burden on summary judgment. *Celotex Corp.*, 477 U.S. at 324.

Third, plaintiff's wrongful discharge claim is flawed because she has adequate remedies for her termination under the various statutes she relies upon in her pleadings. A wrongful discharge claim is not available when "the very statute creating the relied-upon public policy already contains a specific and significant remedy for the party aggrieved by its violation." *Nolting v. Nat'l Capital Group*, 621 A.2d 1387, 1387, 1389-90 (D.C. 1993); *see also Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251, 254 (D.C. Cir. 2008).

Laurent's suit against defendants Jones, Ross, and Sanders is in their personal, rather than official, capacities, summary judgment must be granted for the individual defendants on these counts.[8]

## IV. Conclusion

For the foregoing reasons, defendants' motions for summary judgment are GRANTED. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge

---

[8] Laurent's only other claim against the individual defendants appears to be Count IV, the breach of contract claim. Plaintiff claims the individual defendants are liable as agents of the Bureau, Am. Compl. at 4, but District of Columbia law is clear that unless an agent specifically binds himself, he will not be personally liable for a contract executed by a known principal. *Rittenberg v. Donohoe Constr. Co., Inc.*, 426 A.2d 338, 341 (D.C. 1981). Because none of the individual defendants contractually bound themselves to the plaintiff, the breach of contract claim against them must also be dismissed.